UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of SUSTAINABLE MODULAR MANAGEMENT, INC., | )<br>)<br>)<br>) |
| Plaintiff, | ) No. 1:16-cv-02915-JMS-MJD |
| vs. | )<br>) |
| CUSTOM MECHANICAL SYSTEMS, CORP. also known as CMS CORPORATION, LEXON INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| CUSTOM MECHANICAL SYSTEMS, CORP., | )<br>)<br>) **ORDER ON DEFENDANTS'** |
| Counter Claimant, | ) **MOTION TO DISMISS**<br>) |
| vs. | )<br>) |
| SUSTAINABLE MODULAR MANAGEMENT, INC., | )<br>)<br>) |
| Counter Defendants. | )<br>) |
| CUSTOM MECHANICAL SYSTEMS, CORP., | )<br>)<br>) |
| Third Party Plaintiff, | )<br>) |
| vs. | )<br>) |
| GREAT AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Third Party Defendants. | )<br>)<br>) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Defendant Custom Mechanical Systems, Corp., also known as CMS Corporation ("CMS"), entered into a contract with the United States Government in 2014 regarding a construction project at a Marine Corps Base in Hawaii. CMS subsequently entered into two subcontracts with Plaintiff Sustainable Modular Management, Inc. ("SMM"), related to the construction project. SMM has sued CMS and its surety, Defendant Lexon Insurance Company ("Lexon"), alleging breach of contract and quantum meruit claims against CMS and a payment bond claim against Lexon. [Filing No. 14 at 4-5.] CMS and Lexon (collectively, "Defendants") move to dismiss all of SMM's claims and its request for attorney's fees, [Filing No. 23], and SMM opposes that request, [Filing No. 41]. For the reasons that follow, the Court grants CMS's Motion to Dismiss. [Filing No. 23.]

### I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual

allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. When a plaintiff "pleads [itself] out of court by making allegations sufficient to defeat the suit," dismissal under Rule 12 is appropriate. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007). A copy of any written instrument that is an exhibit to a pleading is considered to be part of the pleading and may be considered in ruling on a motion to dismiss without converting the motion into a motion for summary judgment. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (citing Fed. R. Civ. Pro. 10(c)).

## II.
### BACKGROUND

The following allegations are taken from SMM's Amended Complaint and are accepted as true for purposes of deciding the pending motion, consistent with the applicable standard of review. [Filing No. 14.]

In 2014, CMS contracted with the Government for the construction of a temporary medical facility and preparation site at the Marine Corps Base in Kaneohe Bay, Hawaii (the "Project"). [Filing No. 14 at 2.] Pursuant to the Miller Act, which governs certain federal contracts, CMS obtained a payment bond totaling more than $5,000,000 from Lexon. [Filing No. 14 at 2; Filing No. 14-1.] The payment bond guarantees payment to all of CMS's subcontractors in the event that CMS fails to fulfill its obligation to directly pay the subcontractors. [Filing No. 14 at 2.]

On October 7, 2014, CMS entered into two subcontracts with SMM for work on the Project (the "Subcontracts"). [Filing No. 14; Filing No. 14-2; Filing No. 14-3.] CMS and SMM entered into Subcontract 1576 to provide modular buildings as well as the installation of fire alarms, fire sprinklers, and voice and data systems on the Project. [Filing No. 14 at 3; Filing No. 14-2.] CMS

3

and SMM entered into Subcontract 1577 for, among other things, the installation of water and sewer lines and various electrical systems on the Project. [Filing No. 14 at 3; Filing No. 14-3.] CMS agreed to pay SMM $2,725,336.41 for its services under the Subcontracts. [Filing No. 14 at 3.]

CMS caused numerous delays throughout the course of the Project, which delayed SMM's performance of its obligations under the Subcontracts by at least 259 days. [Filing No. 14 at 3.] These delays increased the cost of SMM's labor, management, and overhead by $268,065. [Filing No. 14 at 3.]

CMS requested that SMM complete additional work not specifically included in the Subcontracts and agreed to pay SMM for the value of the additional work performed. [Filing No. 14 at 3.] The value of that additional work is $232,666.89. [Filing No. 14 at 3.]

The State of Hawaii imposed a General Use and Excise Tax on SMM in the amount of $151,947.81. [Filing No. 14 at 4.] SMM paid this tax and CMS refuses to reimburse SMM for that amount. [Filing No. 14 at 4.]

SMM submitted invoices to CMS for payment totaling $3,378,016.11, and CMS subsequently submitted these invoices to the Government for payment. [Filing No. 14 at 4.] SMM believes that the Government paid CMS the amounts requested. [Filing No. 14 at 4.] CMS has only paid SMM $2,230,357.75 to date. [Filing No. 14 at 4.]

On October 26, 2016, SMM filed a Complaint in this District.[1] [Filing No. 1.] SMM filed

---

[1] The Court ordered SMM to show cause why its action should not be transferred to the United States District Court for the District of Hawaii because the Miller Act provides that "'[a] civil action brought under this subsection must be brought – in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.'" [Filing No. 7 (citing 40 U.S.C. § 3133(b)(3)(B)).] SMM responded that the Subcontracts contain Indiana forum selection clauses and cited case law supporting Indiana as the proper venue, [Filing No. 8], and the Court accepted its response as sufficient, [Filing No. 10].

an Amended Complaint on December 20, 2016, and it remains the operative pleading. [Filing No. 14.] SMM asserts breach of contract and quantum meruit claims against CMS and a breach of payment bond claim against Lexon. [Filing No. 14.] In response, CMS filed a Counterclaim against SMM and a Third-Party Complaint against Great American Insurance Company ("GAIC").[2] [Filing No. 22.] Defendants also filed a Motion to Dismiss SMM's Claims. [Filing No. 23.] SMM opposes that motion, [Filing No. 41], Defendants filed a reply, [Filing No. 46], and the motion is now ripe for the Court's decision.

## III.
### DISCUSSION

Defendants move to dismiss all of SMM's claims—the breach of contract and quantum meruit claims against CMS and the breach of payment bond claim against Lexon. [Filing No. 23; Filing No. 24.] They also ask the Court to deny the request for attorneys' fees in SMM's prayer for relief because neither the Miller Act nor the Subcontracts contain fee-shifting provisions. [Filing No. 24 at 21-22.] The terms of the Subcontracts that must be analyzed to decide the pending motion are identical. [Filing No. 14-2; Filing No. 14-3.]

If no party raises a choice of law issue, "the federal court may simply apply the forum state's substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citations omitted). Here, both parties cite Indiana law to support their interpretations of the Subcontracts, [Filing No. 24 at 10-11; Filing No. 41 at 6-9], and the Court will follow suit.

### A. Breach of Contract Claim Against CMS

SMM alleges that CMS breached the Subcontracts by causing numerous delays throughout the course of the Project, requesting that SMM complete additional work not specifically included

---

[2] CMS alleges that GAIC was SMM's surety and that it issued and had outstanding performance and payment bonds for the benefit of CMS. [Filing No. 22 at 3-4.]

5

in the Subcontracts, and requiring SMM to pay Hawaii taxes in violation of the Subcontracts. [Filing No. 14.] The Court will first set forth the generally applicable standard for contract interpretation and then address the parties' specific arguments regarding CMS's alleged breaches.

### 1) Generally Applicable Law

"Indiana courts zealously defend the freedom to contract," *Indiana v. Int'l Bus. Machines Corp.*, 51 N.E.3d 150, 160 (Ind. 2016), and the Indiana Supreme Court has confirmed that courts "must leave to the individual parties the right to make the terms of their agreements as they deem fit and proper, and, as long as those terms are clear and unambiguous and are not unlawful, [courts] can only enforce them as agreed upon[,]" *New Welton Homes v. Eckman*, 830 N.E.2d 32, 35 (Ind. 2005). It is well-settled under Indiana law that "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Morris v. Crain*, 71 N.E.3d 871, 880 (Ind. Ct. App. 2017).

Interpretation of a written contract is typically a question of law. *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001); *Tri-Central High Sch. v. Mason*, 738 N.E.2d 341, 344 (Ind. Ct. App. 2000). The goal of contract interpretation is to ascertain and give effect to the parties' intent, as reasonably manifested by the language of the agreement. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Absent ambiguity, the Court gives terms of a contract their plain and ordinary meaning. *Indiana Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1070 (Ind. Ct. App. 2001). "A contract is not ambiguous merely because a controversy exists where each party favors a different interpretation; rather a contract is ambiguous where it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Id.* at 1069-70. The Court is required

6

to "consider a contract's provisions together and in a way that harmonizes them." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 644-45 (7th Cir. 2016) (citing Indiana law).

"Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the Court] will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Ryan v. Ryan*, 972 N.E.2d 359, 364 (Ind. 2012).

*2) Delay Damages*

SMM contends that CMS breached the Subcontracts by causing numerous delays throughout the Project that increased SMM's overhead by $268,065. [Filing No. 14 at 3.] CMS asks the Court to dismiss SMM's breach of contract claim seeking delay damages because CMS contends that the Subcontracts prohibit SMM from recovering delay damages. [Filing No. 24 at 7-12.] CMS emphasizes that the Subcontracts provide that "[SMM] shall not be entitled to extra compensation for any suspension, delay, or acceleration not specifically allowed and paid to CMS by its Client[3] or others for [SMM's] benefit." [Filing No. 14-2 at 8.] CMS contends that even if it obtains additional compensation for delay, Section 5.2 of the Subcontracts confirms that, at best, SMM "shall be entitled to share pro rata in such additional compensation, as determined in the good faith judgment of CMS." [Filing No. 14-2 at 9; Filing No. 14-3 at 9.] CMS emphasizes that "[i]n this case, facts are neither pled, nor do they exist, that CMS received payment from the

---

[3] The Subcontracts identify the Client as "NAVFAC ROICC Kanoehe Bay." [Filing No. 14-2 at 1; Filing No. 14-3 at 1.]

Government to compensate CMS for the delayed Project or from any other source." [Filing No. 24 at 8.]

In response, SMM emphasizes the applicable standard of review and argues that it has set forth sufficient allegations to plead a breach of contract claim against CMS for delays on the Project. [Filing No. 41 at 4-8.] SMM argues that the provisions of the Subcontracts cited by CMS do not contemplate a situation where CMS caused the delays for which SMM seeks to recover. [Filing No. 41 at 5.] SMM does not dispute that "a properly and clearly worded contract provision may operate as a waiver of claims for delay damages on a given project," but it contends that no such provision exists in the Subcontracts and that the cases cited by CMS are distinguishable. [Filing No. 41 at 5-7.] SMM emphasizes that the Subcontracts allow it to recover for delay damages to the extent CMS recovers such damages from another entity. [Filing No. 41 at 7.]

In its reply, CMS again points to language in the Subcontracts that states that SMM cannot recover for delay damages. [Filing No. 46 at 3-4.] Although CMS acknowledges that SMM theoretically could recover for delay damages if CMS received compensation from a third-party for SMM's benefit, it emphasizes that SMM has not and cannot in good faith allege that has happened. [Filing No. 46 at 4.]

The Subcontracts contain the following language regarding the responsibility for costs, losses, and penalties for payment and delay:

- Section 5.1: "[SMM] agrees to commence, pursue, and complete the Work diligently, in such sequence and according to such schedule, as CMS shall establish from time to time . . . . [SMM] shall be responsible for any losses or penalties incurred as a result of delays in completing its Work including, but not limited to any liquidated damages assessed against CMS by the Client and any increased costs incurred by CMS as a consequence of such delays."

- Section 5.2: "[SMM] shall not be entitled to extra compensation for any suspension, delay, or acceleration not specifically allowed and paid to CMS by its Client or other for [SMM's] benefit. In the event that CMS obtains

8

- additional compensation from the Client or others for delay or interference, [SMM] shall be entitled to share pro rata in such additional compensation, as determined in the good faith judgment of CMS."

- Section 5.4: "Costs caused by delays or by improperly timed activities or defective construction shall be borne by [SMM] or other subcontractor(s) responsible therefor. CMS shall not be responsible to [SMM] for costs incurred by [SMM] because of delays, improperly timed activities, damage to the Work or defective construction of a separate subcontractor and all subcontractors expressly waive the right to make such a claim."

[Filing No. 14-2 at 8-9; Filing No. 14-3 at 8-9.]

"No-damage-for-delay" clauses are not against public policy and are enforced by Indiana courts. *See, e.g.*, *Indiana Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1073 (Ind. Ct. App. 2001) (rejecting argument that they are against public policy). The unambiguous language of the Subcontracts cited above clearly conveys that CMS and SMM contracted for the financial responsibility associated with any delay to be SMM's responsibility, such that SMM cannot recover damages for delay from CMS. While SMM argues that the Subcontracts do not contemplate such delay being caused by CMS—as SMM alleges was the case here—the Court agrees with CMS that the Subcontracts clearly state that CMS is not responsible for delay damages of any sort, regardless of the cause. To the extent Section 5.2 of the Subcontracts allows SMM to recover a pro rata share of delay damages subsequently paid to CMS by a third-party or the Government for the benefit of SMM, SMM has not alleged that CMS has received such payment. Accordingly, SMM's claim that CMS breached the Subcontracts by not paying for the alleged delay fails as a matter of law because the Subcontracts unambiguously state that costs and damages associated with delay were SMM's responsibility.

*3) Hawaii Excise Taxes*

CMS asks the Court to dismiss SMM's breach of contract claim to the extent it is based on SMM paying excise taxes in Hawaii. [Filing No. 24 at 12-16.] CMS contends that the

unambiguous language of the Subcontracts provides that SMM was responsible for all taxes associated with its work on the Project and that this is the only interpretation that harmonizes all provisions of the Subcontracts. [Filing No. 24 at 13.]

In response, SMM claims there are "essentially three provisions of the Contracts that must be interpreted." [Filing No. 41 at 8.] It points to a provision requiring it to pay Ohio taxes, which it emphasizes is more specific than the general "all taxes" requirement and, thus, should control. [Filing No. 41 at 9-10.]

In reply, CMS emphasizes that SMM has not identified any provision of the Subcontracts "in which there is any limitation of any kind placed on SMM's obligation to pay the taxes associated with SMM's scope of work." [Filing No. 46 at 8.] CMS argues that the "Ohio taxes" provision is a subset encompassed by the unambiguous language requiring SMM to pay "all taxes." [Filing No. 46 at 9-10.] CMS asks the Court to reject SMM's argument that the more specific Ohio provision should control, emphasizing that such a principle does not apply when there is not an inconsistency. [Filing No. 46 at 11.]

The Subcontracts contain the following language regarding the responsibility for taxes:

- "ALL WORK TO BE PERFORMED AS DESCRIBED WITHIN THIS DOCUMENT AND THE ATTACHED FOR THE TOTAL PRICE OF [SUBCONTRACT AMOUNT] IS INCLUSIVE OF ALL TAXES AND FREIGHT."

- "[SMM] is responsible for payment of taxes to the State of Ohio for all materials purchased under this subcontract agreement."

- Article 15: "Except to the extent expressly provided otherwise elsewhere in this Subcontract, [SMM] shall pay when due, and the Subcontract Amount shall be inclusive of, all local, municipal, state and federal sales and use taxes, excise taxes, duties and all other governmental fees and taxes or charges of whatever nature applicable to the performance of the Work of this Subcontract . . . ."

[Filing No. 14-2 at 1-3; Filing No. 14-2 at 17; Filing No. 14-3 at 1-3; Filing No. 14-3 at 17.]

SMM asks the Court to construe these provisions to mean that SMM was only responsible for Ohio taxes, not all taxes, and that CMS breached the contract by not reimbursing SMM for paying Hawaii excise taxes. SMM claims that specific terms in a contract control over general terms, but its argument ignores that this principle applies when the provisions being analyzed are inconsistent. *See Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1100 (Ind. Ct. App. 2013) ("Where the parties have agreed to a specific term, an apparently inconsistent general statement must yield to a more specific term."). The problem with SMM's argument is that the Subcontracts are not inconsistent on the issue of who was responsible for paying taxes—they clearly state that SMM was responsible for paying all taxes, both Ohio and otherwise. The Court is required to "consider a contract's provisions together and in a way that harmonizes them." *Bible*, 799 F.3d at 644-45. SMM's argument fails to do that because it would render the "all taxes" provision superfluous. Instead, as CMS points out with diagrams in its reply brief, construing the Ohio taxes provision as a subset of the "all taxes" provision harmonizes both provisions. [Filing No. 46 at 9.] That interpretation must control. For these reasons, SMM's claim that CMS breached the Subcontracts by not paying for Hawaii excise taxes fails as a matter of law because the Subcontracts unambiguously state that all taxes were SMM's responsibility.

*4) Additional Work*

CMS asks the Court to dismiss SMM's breach of contract claim to the extent it is based on SMM's allegation that it performed "additional work" for which it was not paid. [Filing No. 24 at 16-19.] CMS emphasizes that the Subcontracts contained detailed provisions regarding how the parties would handle changes in work on the Project and that SMM has not alleged or referenced that it followed those procedures. [Filing No. 24 at 16-17.] CMS points out that the Subcontracts contain a provision stating that SMM was not to perform any additional work without an approved

11

change order and that SMM assumed the risk associated with moving forward with additional work without a change order. [Filing No. 24 at 17-18.]

In response, SMM claims that it did not have to allege that it followed the terms of the Subcontracts to state a claim for additional work. [Filing No. 41 at 10.] SMM claims that it will "show at trial" that CMS issued multiple change orders to SMM encompassing "virtually all of SMM's additional compensation claim. SMM did not sign these change orders because CMS improperly included liquidated damages [and] backcharges, which CMS attempted to assess against SMM." [Filing No. 41 at 11.]

In reply, CMS reasserts that SMM's claim is insufficient to plead a breach of contract claim for additional work and again emphasizes the requirements in the Subcontract for SMM to be compensated for additional work. [Filing No. 46 at 6-7.] CMS contends that SMM cannot simply rely on what it claims it can show at trial, especially when its allegations are insufficient to show a breach of contract. [Filing No. 46 at 6-7.]

SMM's Amended Complaint alleges that CMS breached the Subcontracts by not paying it for additional work it performed. [Filing No. 14 at 3.] The Subcontracts include the following provisions regarding the performance of additional work:

- Section 6.1: "Changes in the Work may be accomplished after execution of the Subcontract and without invalidating the Subcontract, by Change Order, Change Directive, or order for Minor Change in the Work, subject to the limitations stated in this Article 6 . . . ."

- Section 6.2: "[SMM] shall submit to CMS a lump sum or guaranteed maximum price proposal for such work, which proposal shall include a detailed cost breakdown for each component of the work, indicating both quantities and unit prices . . . . [SMM] shall not commence additional work unless such work is first expressly authorized by CMS in writing."

- Section 6.6: "Any work performed without an approved change order by [SMM] beyond its contractual agreement with CMS shall be performed at

>     [SMM's] own risk. Nothing herein shall be construed to obligate CMS to pay
>     for any work that it has not approved through a written change order."

[[Filing No. 14-2 at 9-11](); [Filing No. 14-3 at 9-11]().]

The unambiguous language of the Subcontracts cited above clearly conveys that CMS and SMM contracted for the financial responsibility associated with any additional work to be SMM's responsibility unless there was a change order. SMM's Amended Complaint does not allege that it sought or received a change order before doing the additional work for which it now seeks compensation. [[Filing No. 14 at 3]().] While SMM contends that it did not need to make such an allegation to plead a breach of contract claim regarding additional work, the Court disagrees given the specific language of the Subcontracts that unambiguously states that a change order was required for SMM to be compensated for additional work and that "[n]othing herein shall be construed to obligate CMS to pay for any work that it has not approved through a written change order." [[Filing No. 14-2 at 9-11](); [Filing No. 14-3 at 9-11]().] Without alleging that it complied with that specific requirement, which SMM confirms in its response brief it cannot do because it did not sign any change orders, SMM's claim that CMS breached the Subcontracts by not paying for additional work fails.

### 5) Remaining Contract Balance

In its response brief, SMM claims that even if the Court dismisses its breach of contract claim based on CMS's delay, failure to pay Hawaii excise taxes, and non-payment for additional work, CMS still owes SMM $494,978.70 under the Subcontracts. [[Filing No. 41 at 11]().] SMM asks the Court not to dismiss this portion of its breach of contract claim because "CMS fails to explain how it can owe SMM a remaining contract balance . . . and yet be entitled to a dismissal of SMM's entire Breach of Contract Claim." [[Filing No. 41 at 11]().]

In reply, CMS contends that SMM's "claims for remaining contract balance are not clear" and are "confusing." [Filing No. 46 at 11.] It asks the Court to either dismiss SMM's entire breach of contract claim or make it replead that claim more definitively pursuant to Federal Rule of Civil Procedure 12(e). [Filing No. 46 at 11.]

The Court agrees with SMM that to the extent it has pled a general breach of contract claim against CMS for the remaining amount—*i.e.*, that SMM had Subcontracts with CMS, CMS breached those contracts by not paying SMM a certain amount owed, and SMM was damaged—that claim could survive CMS's Motion to Dismiss. But the Court agrees with CMS that it is unclear on what basis CMS could owe SMM under the Subcontracts, given that the Subcontracts preclude recovery on the specific bases identified by SMM. Accordingly, to advance this litigation, and to the extent SMM intends to pursue a breach of contract claim against CMS that is not based on one of the theories precluded by the Subcontracts and already rejected by the Court, SMM must file a Second Amended Complaint specifically asserting a basis for that claim.

### B. Quantum Meruit Claim Against CMS

CMS asks the Court to dismiss SMM's quantum meruit claim against it as a matter of law. [Filing No. 24 at 19-21.] CMS emphasizes that the Subcontracts cover the parties' dispute and that it is well-established under Indiana law that quantum meruit is not available when a contract provides a remedy at law. [Filing No. 24 at 19-20.]

In response, SMM asks the Court not to dismiss its quantum meruit claim because it is "an alternative theory of recovery in this matter" should CMS deny the validity of the Subcontracts. [Filing No. 41 at 12.] SMM acknowledges that "if CMS unequivocally acknowledges the validity of the Contracts, its claim for its quantum meruit is unnecessary." [Filing No. 41 at 12.] SMM

14

still asks the Court to deny CMS's request to dismiss its quantum meruit claim at this stage. [Filing No. 41 at 12.]

In reply, CMS emphasizes that it has "acknowledged the applicability of the Subcontracts at issue in this case." [Filing No. 46 at 11.]

"To prevail on a claim of quantum meruit—also referred to as unjust enrichment, contract implied-in-law, constructive contract, or quasi-contract—the plaintiff must establish that a measurable benefit has been conferred upon the defendant under such circumstances that the defendant's retention of the benefit would be unjust." *Town of New Ross v. Ferretti*, 815 N.E.2d 162, 168 (Ind. Ct. App. 2004). Quantum meruit is an equitable doctrine and, consequently, because a contract provides a remedy at law, "when the rights of parties are controlled by an express contract, recovery cannot be based upon a theory implied in law." *Id.* Put another way, "the existence of a valid express contract for services precludes the implication of a contract covering the same subject matter." *Id.*

CMS has admitted that the Subcontracts control the parties' dispute. [Filing No. 24 at 19-20; Filing No. 46 at 11.] In fact, CMS relies on the Subcontracts to pursue various counterclaims against SMM. [Filing No. 22.] Because CMS has not disavowed the validity of the Subcontracts, SMM cannot prevail on its quantum meruit claim as a matter of law. Accordingly, that claim is dismissed.

**C. Payment Bond Claim Against Lexon**

Lexon asks the Court to dismiss SMM's payment bond claim against it because SMM's claim against Lexon is derivative of its claims against CMS. [Filing No. 24 at 22-25.] In response, SMM essentially concedes that if its claims against CMS are dismissed, its claims against Lexon may also be dismissed. [Filing No. 41 at 13 (SMM's brief acknowledging the "derivative" nature

15

of the claims and incorporating its arguments made with regard to CMS).] Because the Court has dismissed all of SMM's claims against CMS, SMM's payment bond claim against Lexon also must be dismissed at this time. *See BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland, 679 F.3d 643, 654 (7th Cir. 2012)* (holding that Indiana surety law is "quite clear [that] sureties are generally liable only where the principal itself is liable"). To the extent that SMM files a Second Amended Complaint asserting a breach of contract claim against CMS as contemplated earlier in this Order, it may also reassert a payment bond claim against Lexon.

### D. Request for Attorneys' Fees[4]

SMM requests that Defendants "pay all reasonable and necessary attorneys' fees" incurred by SMM in this litigation. [Filing No. 14 at 6.] In their Motion to Dismiss, Defendants point out that the Subcontracts do not contain a fee-shifting provision and that attorneys' fees are not recoverable under the Miller Act unless there are contractual rights to the contrary. [Filing No. 24 at 22.]

In response, SMM concedes that "the Miller Act does not provide for the recovery of attorneys' fees, nor is there a contract provision in either of the Contracts which would allow for fee shifting in this matter." [Filing No. 41 at 13.] Nevertheless, SMM asks the Court not to rule out an eventual award of attorneys' fees "should CMS's behavior be deemed to be intended to cause unreasonable hardship on SMM." [Filing No. 41 at 13.]

Given SMM's concession that neither the Miller Act nor the Subcontracts include a fee-shifting provision that would entitle SMM to recover attorneys' fees, the Court agrees with Defendants that the standard American Rule applies and that each party is responsible for its own

---

[4] Although the Court has dismissed all of the claims SMM asserts in its Amended Complaint, [Filing No. 14], the Court will still briefly address the request for attorneys' fees in case SMM does file a Second Amended Complaint.

16

attorneys' fees in this litigation. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (reiterating the "bedrock principle known as the American Rule: [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise"). That said, the Court of course maintains its inherent authority to sanction any party for bad faith conduct or conduct that abuses the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("Indeed, there are ample grounds for recognizing ... that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," even though the so-called "American Rule" prohibits fee shifting in most cases.") (citations omitted); *Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2017 WL 1352710, at *4 (N.D. Ind. 2017) ("Under its inherent powers, a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").

## IV.
### CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**. [Filing No. 23.] To the extent that SMM can plead a breach of contract claim and payment bond claim for an amount of damages not based on delay, taxes, or additional work, it must file a Second Amended Complaint by **May 22, 2017**, specifically asserting such a claim. If it does so, CMS and Lexon may answer or otherwise respond consistent with the Federal Rules of Civil Procedure. If SMM does not file a Second Amended Complaint by that date, CMS must file a notice by **June 1, 2017** stating whether it intends to continue to pursue its counterclaim against SMM or third-party claim against GAIC or whether this Court can enter final judgment in its favor at that time.

Date: 5/5/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Sean Thomas Devenney
DREWRY SIMMONS VORNEHM, LLP
sdevenney@dsvlaw.com

Andrew J. Haliw, III
GENERAL COUNSEL, CMS CORPORATION
ahaliw@cms-corporation.com

Bryan P. Stevens
HALLETT & PERRIN, P.C.
bstevens@hallettperrin.com

Thomas A. Pastore
THOMAS PASTORE, PC
tpastore@pastorelaw.com