UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> for the use and benefit of ) <br> SUSTAINABLE MODULAR ) <br> MANAGEMENT, INC., ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> CUSTOM MECHANICAL SYSTEMS, ) <br> CORP. a/k/a CMS CORPORATION, and ) <br> LEXON INSURANCE COMPANY, ) <br> ) <br> *Defendants*. ) | CIVIL ACTION NO: 1:16-cv-2915-JMS-MJD |

### BRIEF IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT

Sustainable Modular Management, Inc. ("SMM"), by counsel, and pursuant to Rule 59(e) of the Federal Rules of Civil Procedure submits the following Brief in Support of Motion to Alter or Amend Judgment:

### I. Procedural History

This matter was originally filed by SMM on October 26, 2016. After consultation with counsel for Custom Mechanical Systems, Corp. a/k/a CMS Corporation ("CMS") regarding the proper name of CMS, and prior to CMS filing a responsive pleading, SMM filed an Amended Complaint on December 20, 2016, which changed the name of CMS. The content of SMM's Amended Complaint against CMS remained the same as in its original Complaint. On January 19, 2017, CMS responded to SMM's Complaint by filing a Motion to Dismiss pursuant to Fed. R.

Civ. P. 12(b)(6). On February 21, 2017, SMM filed its Response to CMS's Motion to Dismiss; and, on February 28, 2017, CMS filed a Reply to SMM's Response.

On May 5, 2017, the Court granted CMS's Motion to Dismiss as to all aspects of SMM's Amended Complaint; however, it granted leave to SMM to file a second amended complaint against CMS limited solely to a claim for breach of contract for CMS's failure to pay SMM its contract balance earned on the Project.

By its Order dismissing the remainder of SMM's Amended Complaint without granting SMM leave to amend, the Court essentially rendered a partial judgment on the pleadings in favor of CMS on SMM's other claims for relief. To comply with the Court's Order, on May 22, 2017, SMM filed its Second Amended Complaint against CMS seeking recovery from CMS for its breach of contract for failing to pay SMM the original contract balances earned by SMM on the Project despite having completed its work on the Project. In compliance with Fed. R. Civ. P. 59(e), SMM is requesting that the Court reconsider its Order dismissing SMM's Amended Complaint without leave to amend to allow SMM to continue to pursue the recovery of additional compensation from CMS earned on the Project.

## II.  <u>Standards for Determining Motion to Dismiss</u>

SMM does not take issue with the Courts statement of the standard of review relied upon in dismissing the Amended Complaint; rather, it maintains the Court misapplied the standard concerning SMM's claim against CMS for additional compensation. For ease of reference, SMM restates the 12(b)(6) motion to dismiss standard as follows:

> Federal Rule of Civil Procedure 8(a)(2) "requires only a 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. <u>Argument</u>

**A. <u>SMM's Amended Complaint Sufficiently Alleged Entitlement to Additional Compensation.</u>** The allegations contained within SMM's Amended Complaint were sufficient, taken as true, to establish its entitlement to additional compensation. To counter these allegations, CMS cited language in the Contracts and alleged SMM was not entitled to additional compensation because it did not strictly comply with the Contracts' provisions relating to Change Orders. In other words, CMS invited the Court not to test the pleadings but to rule on the merits of SMM's claim for additional compensation. When viewed from the perspective of determining the validity of a Motion to Dismiss, the Court was only tasked with reviewing allegations in the Amended Complaint for sufficiency. No evidence was admitted to either support the allegations in the Amended Complaint or CMS's allegations in the Motion to Dismiss; however, SMM did allege in the Amended Complaint that the evidence adduced in the matter would support its entitlement to additional compensation. No evidence was submitted by

CMS to support its allegations, and SMM was not required to rebut CMS's allegations with evidence to the contrary.

By accepting as true CMS's allegations that SMM was not entitled to additional compensation instead of SMM's allegations that is was entitled to additional compensation or that it would be able to submit evidence to substantiate its claim to additional compensation, the Court misapplied the *Twombly* standard on CMS's Motion to Dismiss. At a minimum, if the Court determined that SMM had not sufficiently pled its entitlement to additional compensation, it should have granted SMM leave to replead its claim in its Second Amended Complaint, stating in more detail the factual basis of its claims against CMS for additional compensation.

B. **Evidence Supporting SMM's Claim for Additional Compensation.** Although not required to demonstrate its right to replead the additional compensation claim, SMM is submitting the Affidavit of Harold W. Weatherly Jr. and accompanying documents ("Weatherly Affidavit"), which establish the process and procedure followed by CMS and SMM regarding SMM's claims for additional compensation. The Weatherly Affidavit is attached hereto as Exhibit "1". The Weatherly Affidavit and the documents supporting it establish the following:

1. This Project was awarded to CMS as a "design-build" project that required CMS to both design and build the Project.

2. At the time of SMM's bid, CMS had not completed a design for the Project and SMM only had conceptual drawings issued by the United States Government from which to prepare a bid.

4

3. To assist with the design of the Project, specifically with issues associated with the pre-fabrication process, SMM prepared "Production Drawings" for use by CMS in creating a final design.

4. Because of the relatively short scheduled duration for the Project, CMS and SMM agreed SMM could commence fabrication of the modular building units based on the "Production Drawings" prepared by SMM.

5. Fabrication of the modular building began in January 2015. The modular building units were delivered to the Project beginning on May 29, 2015. The entire modular building was on the Project by June 1, 2015.

6. CMS employed a design firm known as Arcadis to prepare the actual design drawings for the Project ("Final Design Drawings"). These were finalized on May 12, 2015, and delivered to SMM on June 2, 2015, six months after SMM began fabrication and after all of the modular building units were delivered to the Project.

7. The Final Design Drawings contained differences from the Production Drawings that resulted in additional work for SMM, which CMS and SMM anticipated at the time CMS accepted SMM's bid.

8. Beginning on the date SMM received the Final Design Drawings, it began submitting Change Order Requests to CMS for additional work that would be required to complete the Project in conformance with the Final Design Drawings.

9. CMS issued Change Order No. 1 for work contained within the Final Design Drawings but not included in the Production Drawings relied upon by SMM to fabricate the modular building. (See Weatherly Affidavit, Exhibit A.)

10. After receiving Change Order Requests from SMM, CMS issued multiple change orders to SMM to compensate SMM for the additional work for which the Change Order Requests were submitted. (See Weatherly Affidavit, Exhibits G, H, K and M.)

11. For each Change Order issued by CMS after Change Order No. 1, the only reason SMM refused to sign or agree to the Change Order was because it only partially compensated SMM for the additional work, included backcharges that were not accepted or agreed upon by SMM, or incorporated prior Change Orders that suffered from these problems. In short, CMS attempted to use the Change Order process to improperly force SMM into making concessions by holding its additional compensation claims hostage unless SMM also agreed to CMS's charges.

12. To comply with its obligations under Section 6.6 of the Contracts and to avoid delaying the Project while it awaited CMS's response to SMM's complaints about the Change Order Requests, SMM continued performing work, with CMS's full knowledge and consent, including the claimed additional work on the Project.

As demonstrated above, CMS either expressly or impliedly waived any provision of the Contracts relating to strict compliance with the Change Order process. SMM also contends that CMS ratified through its conduct, SMM's performance of the additional work, and therefore would be estopped from seeking to enforce the provisions of the Contracts relied on in CMS's Motion to Dismiss.

As a result, SMM has demonstrated a factual basis for seeking additional compensation that, taken as true and drawing all permissible influences in favor of SMM, demonstrate a plausible entitlement to relief.

C. **SMM Complied with the Terms of the Contract for Additional Compensation.** In its Motion to Dismiss, CMS argued that SMM's claims for additional

compensation were waived due to noncompliance with the terms of the Contracts relating to changes in the work that are directed by CMS. CMS cited several provisions of the Contracts in support of its position; and the Court accepted CMS's allegations as true, citing the same provisions relied upon by CMS.

SMM's claim for additional compensation does not relate to any change that was implemented based on a written directive from CMS; rather, SMM's claim for additional compensation falls directly under Section 6.5 of the Contracts, which provides:

> In the event of any dispute, controversy, or *claim for additional compensation or time extensions*, notice in writing shall be given to CMS no later than five (5) days following the occurrence on which claim is based. Any claim not presented within such time period shall be deemed waived by Subcontractor. Such notice shall describe the dispute, controversy or claim in detail so as to allow CMS to review its merits. Promptly thereafter, Subcontractor shall provide detailed information to substantiate such claim including supporting documentation and calculations, and including any information requested by CMS. (Emphasis Added.)

This section of the Contracts applies specifically to claims made by the SMM for additional compensation and additional time within which to complete its scope of work. The only prerequisite to pursuing such a claim is that it must be made within five days from the date of the occurrence on which the claim is based. As is evidenced by the Weatherly Affidavit, each claim for additional compensation submitted by SMM was submitted before the work which gave rise to the claim was performed. Thus, it is apparent the claims were timely pursued by SMM.

CMS's reliance solely upon certain provisions of Section 6 of the Contracts relating to Change Orders is misplaced. Section 6.1 provides for the process by which changes in SMM's scope of work can occur when such changes are implemented or directed by CMS. Specifically, Section 6.1 provides that CMS can implement a change in the work by issuing a Change Order, Change Directive, or Minor Change in the Work. Section 6.1.1 of the Contracts defines a

7

Change Order as "*a written direction to the Subcontractor*, signed by CMS and the Subcontractor that modifies the Subcontractor's (a) scope and/or (b) schedule and/or (c) cost" (emphasis added). The additional compensation SMM seeks to recover did not arise out of a written direction by CMS to perform additional work.

A Change Directive is defined in Section 6.1.2 as "*a written direction to the Subcontractor*, signed by CMS and may or may not be agreed to by the Subcontractor, which unilaterally modifies the Subcontract…" (emphasis added). Again, the additional compensation sought by SMM in this matter did not arise out of a written direction from CMS.

And, finally, a Minor Change in the Work is defined as a "change in the Work that does not modify the Subcontractor's (a) scope, and/or (b) schedule and/or (c) cost and is not inconsistent with the intent of the Contract Documents…." No Minor Changes in the Work were issued by CMS that relate to any claims from SMM for additional compensation.

Likewise, CMS's reliance upon Section 6.2 is inapposite to the present circumstances. Section 6.2 also applies to "extra work, additional work or changed work" that "CMS directs Subcontractor (SMM) to perform" and provides for the information that SMM would be required to provide to CMS in the event CMS makes such demand upon SMM. SMM's claim for additional compensation arose out of changes demanded by SMM due to changes in the Final Design Drawings from the Production Drawings. These were not CMS directed changes; and as such, Section 6.1 and/or 6.2 of the Contracts do not apply to these circumstances.

CMS also relied upon a portion of Section 6.6 of the Contracts to argue that SMM assumed the risk of performing work without a Change Order; however, it disregarded the balance of the Section which makes it clear that it would apply to circumstances where a claim for additional compensation could be passed through to the Project Owner. SMM was not a

8

party to the agreement between CMS and the United States Government; and it would, therefore, have no control over whether CMS submitted SMM's claims for additional compensation to the United States Government. In fact, CMS does not know whether CMS passed SMM's claims upstream. But it does know that in almost every instance, when SMM did make a claim, it took CMS several months to respond to the claim; and had it waited for a decision from CMS and the United States Government as to the validity of the claim, the Project could still be under construction. Given the uncertainty as to whether CMS would attempt to pass its claims through to the United States Government, the length of time it took for CMS to acknowledge the existence of the claims, and the continuing and ongoing threat by CMS that it would assess liquidated damages against SMM, CMS's draconian interpretation of Section 6.6 of the Contracts is untenable.

It is also significant to note that it is not entirely clear whether Section 6.6 could even apply under the circumstances presented in the present litigation. The Contracts between CMS and SMM are lump sum contracts based on a conceptual design of the Project. However, the contract between CMS and the United States Government was a design-build contract that required CMS to create the actual design for the Project and construct the Project to that design in return for a lump sum payment. This was not the same contractual arrangement as the Contracts between SMM and CMS.

It is entirely possible that the work for which SMM claims additional compensation and time may very well be compensable as between SMM and CMS because of the nature of their Contracts; but the same claims may not be compensable as between CMS and the United States Government because CMS may have taken on a broader scope and responsibility to the United States Government based on the terms of the design-build contract. At this point in the process,

it is simply not possible to know how this issue should be resolved; however, it is certainly not appropriate to apply an interpretation of the Contracts that favors CMS's position and to preclude SMM from pursuing its additional compensation claim at this stage of the proceeding based on a partial and improper reliance upon only certain portions of Section 6 of the Contracts. There is no evidence to support the application of Section 6.6 of the Contracts to the present circumstances; and if anything, based on applicable rules of interpretation, SMM should be given the benefit of any doubt, uncertainty or ambiguity in the application of Section 6 of the Contracts.

        D.      <u>**CMS and SMM Modified the Terms of the Contracts by Their Conduct.**</u>

While SMM maintains its claims have been properly preserved and pursued under Section 6.5 of the Contracts, and even in if the Court would still apply Sections 6.1, 6.2 and 6.6 to SMM's claims for additional compensation, SMM maintains that the strict application of the change procedure was modified by the parties' conduct.  Indiana recognizes that the parties to a contract may mutually modify a contract's terms and that it is not always necessary to have modifications in writing because they may be implied by the conduct and performance of the parties *City of Indianapolis v. Twin Lakes Enterprises*, 568 N.E.2d 1073, 1084 (Ind. 1991).  Even a term in a contract that prohibits unwritten modifications can be modified by implication.  *Id.* at 1085.  This concept has been expressly adopted and accepted by the United States District Court for the Southern District of Indiana in *Miami Valley Contractors, Inc. v. Town of Sunman,* 960 F. Supp. 1366, 1372(1997).

      Here, the conduct of CMS and SMM modified how changes and additions to the Contracts were presented and preserved.  Each of SMM's claims for additional compensation was implemented first by a request submitted by SMM, consistent with the requirements of Section

6.5 of the Contracts. CMS did not immediately act on most of SMM's requests. For instance, SMM submitted Change Order Request No. 1 on June 2, 2015. (See Weatherly Affidavit, Exhibit A.) It was not until February 17, 2016, nearly 9 ½ months later, that CMS issued Change Order No. 3, which agreed that SMM was entitled to additional compensation for the work it performed in Change Order Request No. 1. (See Weatherly Affidavit, Exhibit H.) Had SMM disregarded CMS's directives to work and sat idle while CMS disregarded Change Order Request No. 1, the Project would have been nearly 10 months further behind schedule (and CMS would have refused to pay SMM for the base contract and claims damages as a result of the alleged breach).

A similar situation arose concerning SMM's Change Order Request No. 5. (See Weatherly Affidavit, Exhibit F.) SMM submitted this Change Order Request on October 17, 2015, and CMS finally agreed to partially compensate SMM when it issued Change Order No. 5 six months later on April 16, 2016. (See Weatherly Affidavit, Exhibit K.) Had SMM waited to perform this work, the Project would have been further delayed. Again, CMS had full knowledge when it accepted SMM's bid that changes would be necessary to modify the work SMM undertook per the Production Drawings to make the modular buildings conform to the Final Design Drawings.

CMS dramatically improved on its ability to evaluate Change Order Requests when it was dealing with Change Order Request No. 7 which was submitted by SMM on April 12, 2016. (See Weatherly Affidavit, Exhibit L.) In fact, this Change Order Request had already been approved on April 11, 2016, when CMS issued Change Order No. 6. (See Weatherly Affidavit, Exhibit M.)

The balance of SMM's Change Order Requests have never been specifically addressed by CMS.  However, on June 1, 2017, the day prior to filing SMM's Motion to Alter or Amend, CMS issued two new Change Directives/Change Orders in which it removed the remaining balance of liquidated damages previously assessed by the United States Government to CMS.  In Change Directive No. 2/Change Order No. 7, CMS has previously removed $611,200.00 of liquidated damages against SMM but retained liquidated damages in the amount of $35,200.00.  (See Weatherly Affidavit, Exhibit N.)  With Change Directive No. 4/Change Order No. 9, CMS eliminated all liquidated damages against SMM.  (See Weatherly Affidavit, Exhibit P.)  On June 1, 2017, CMS also issued Change Directive No. 5/Change Order No. 10 in which it adjusted prior backcharges against SMM and attempted to retract several previous Change Orders that had already been issued.  (See Weatherly Affidavit, Exhibit Q.)  In Change Directive No. 5/Change Order No. 10, CMS reduced prior backcharges by $2,349.61 and attempted to retract Change Order Nos. 2, 3, 5 and 6.  (See Weatherly Affidavit, Exhibits G, H, K and M, respectively.)  These two attempts further modify and alter the process by which additional compensation can be pursued further establishes CMS's utter disregard for the Change Order process provided for within the Contracts.

In short, it is evident that SMM took the necessary steps to notify, preserve and pursue its claims for additional compensation in this matter by timely providing notices, through Change Order Requests that it expected to receive additional compensation; and in some cases, additional time within which to perform its work.  It is equally evident that, for the most part, CMS either failed to address the Change Order Requests, or failed to address them in a timely manner; yet, CMS insisted that SMM continue working on the Project, including performing work on the claimed additional work, all while under the threat of assessing liquidated damages

against SMM for any delays on the Project. Ultimately, several of the Change Order Requests were approved and Change Orders issued, albeit along with other discounts that CMS sought to improperly assess against SMM through coercion.

The indisputable facts relating to the process by which additional compensation was sought by SMM and followed by CMS clearly establish that the applicable processes were followed by SMM and were largely disregarded by CMS.  Under these circumstances it is evident the process for pursuing and preserving the right to obtain additional compensation was modified by CMS's own conduct and SMM should not be summarily precluded from pursuing this element of its claims against CMS.  To do otherwise would be to reward CMS for its own refusal to address SMM's claims by following what it claims to be the appropriate Change Order process.

## IV.  Conclusion

The facts, allegations and issues as presented above clearly establish that SMM is entitled to, at a minimum, continue to pursue its claim for additional compensation against CMS in this proceeding.  SMM complied with its contractual obligation to make claims for additional compensation and time in a timely manner and properly preserved its right to receive additional compensation and time; and it should now be allowed to present evidence of its entitlement to such additional compensation and time in this matter.  To the extent the Change Order process relied upon by CMS even applies, it was CMS who strayed from that process and it should not be given the benefit of disregarding the process to nullify SMM's claims.  CMS's own conduct modified the process by which SMM's claims for additional compensation were treated and dealt with on this Project.  As such, SMM should be allowed to continue to pursue its claim for additional compensation against CMS by either reinstating the Amended Complaint as it relates

to SMM's claims for additional compensation or by granting leave to amend its Second Amended Complaint to plead a claim for additional compensation.

                Respectfully submitted,

By:    /s/ *Thomas A. Pastore*
        Thomas A. Pastore, #15239-49
        THOMAS PASTORE, P.C.
        P.O. Box 40939
        Indianapolis, IN 46240
        (317) 509-4306
        tpastore@pastorelaw.com

        and

        /s/ *Bryan P. Stevens*
        Bryan P. Stevens (*pro hac vice*)
        Texas State Bar No. 24051387
        HALLETT & PERRIN, PC
        1445 Ross Avenue, Suite 2400
        Dallas, Texas 75202
        (214) 953-0053
        (214) 922-4142 (Facsimile)
        bstevens@hallettperrin.com

        **ATTORNEYS FOR SUSTAINABLE MODULAR MANAGEMENT, INC. AND GREAT AMERICAN INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of June, 2017, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Sean Devenney - sdevenney@dsvlaw.com

Bryan P. Stevens - bstevens@hallettperrin.com

Andrew J. Haliw III - ahaliw@cms-corporation.com

/s/ Thomas A. Pastore